# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

       Plaintiff,

   vs.                                           1:15-cr-3764 WJ

BOBBY WILLIS,

       Defendant.

## **MEMORANDUM OPINION AND ORDER ON RESTITUTION**

THIS MATTER comes before the Court following restitution hearings on June 27, 2018, and October 22, 2018. Following an evidentiary hearing on the amount of restitution and any offset to restitution, the Court **FINDS** that restitution is in the remaining amount of $776,640, plus post-judgment interest. A restitution order shall not be issued until the matters of Defendant's ability to pay, and payment schedule, are resolved.

## BACKGROUND

Defendant pled guilty to two counts of wire fraud pursuant to 18 U.S.C. § 1343. The victims transferred $1 million to Defendant to invest in a real-estate LLC on their behalf. Defendant pocketed $995,000 and did not invest the money as promised. $5,000 went to a third party for fees.

At both restitution hearings, the parties agreed that the amount of actual loss was $1 million. Defendant did not object to the PSR factual finding that the amount of loss was $1 million. The Government also requested prejudgment interest at the federal statutory rate, and apparently Defendant took no position.

Defendant and the victims entered into a settlement in a civil case involving this same fraud in the Second Judicial District, Bernalillo County, New Mexico. In the civil settlement, the parties agreed as follows:

> **G.** **Victim Restitution.** The Lees acknowledge and agree that the consideration being provided to Plaintiffs hereunder constitutes full and complete restitution to which the Lees might otherwise be entitled in *USA v. Willis*, 15-CR-037640-MCA (Bobby Willis denies any guilt in *USA v. Willis* but is entering into this Agreement so that the Plaintiffs will be compensated for damages claimed in the Litigation).

**Doc. 64-14, p. 3.** As part of the settlement, Defendant (1) transferred real property, and (2) promised to pay $50,000, to the victims. Defendant has paid at least $15,000, and alleges to have paid $25,000 on the promissory note.

Paragraph 38 of the PSR provided:

> According to defense counsel, the defendant has paid all but $35,000 that were due under a Promissory Note. The Government advised that the defendant has given the victim's in this case a piece of property in the Farmington, New Mexico area that has been appraised at $223,360.00 as part of a civil settlement. The settlement also included a promissory note for $45,000 that has a remaining balance of $35,000.

**Doc. 55, ¶ 38.** Defendant objected to the above, stating that restitution was paid in full by the civil settlement. **Doc. 59.** The PSR also provided that the total loss the victims was $1,000,000. At the sentencing hearing, the Court reserved addressing the amount of restitution until a subsequent hearing.

The Government argues that the restitution amount should be $1 million, before any offset for the value of the property transferred to the Lees. The $1 million restitution amount, before considering any offsets, is supported by the admission in the plea agreement and the undisputed facts in the PSR. Defendant does not dispute the $1 million restitution amount, but instead argues that the real property, along with the $50k promissory note, satisfies his restitution obligation.

A hearing was held on October 22, 2018 to determine the value of the property transferred to the Lees as part of the civil settlement.

**DISCUSSION**

The Mandatory Victim Restitution Act ("MVRA") provides that the district "court shall order ... that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1).

"[A]n order of restitution imposed pursuant to the MVRA must be based on the 'full amount of each victim's losses as determined by the court....'" *United States v. Ferdman*, 779 F.3d 1129, 1132 (10th Cir. 2015) (quoting 18 U.S.C. § 3664(f)(1)(A)). "When calculating loss under the MVRA, absolute precision is not required. A sentencing court may resolve restitution uncertainties with a view towards achieving fairness to the victim, so long as it still makes a reasonable determination of appropriate restitution rooted in a calculation of actual loss." *United States v. Gallant*, 537 F.3d 1202, 1252 (10th Cir. 2008) (internal citations and quotation marks omitted). In calculating loss, "[s]peculation and rough justice are not permitted." *Ferdman*, 779 F.3d at 1132.

I.     **Amount of Actual Loss.**

A.     **General Law.**

"The burden of demonstrating the amount of loss sustained by the victim as a result of the offense shall be on ... the Government." 18 U.S.C. § 3664(e). The PSR must contain "information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim...." *Id.* § 3664(a). "Any dispute as to the proper amount ... of restitution shall be resolved by the court by the preponderance of the evidence." *Id.* § 3664(e). "A district court 'may resolve restitution uncertainties with a view towards achieving fairness to the victim so long as it still makes a

reasonable determination of appropriate restitution rooted in a calculation of actual loss.' " *Ferdman*, 779 F.3d at 1133 (alteration omitted) (quoting *Gallant*, 537 F.3d at 1252).  *See generally United States v. Dickerson*, 678 F. App'x 706, 722 (10th Cir. 2017).

### B.  $1 Million Agreed Loss.

Both parties agreed at the previous restitution hearing on June 27, 2018 that the amount of actual loss is $1 million – the amount of money the Defendant took from the victims.  *See* Transcript of June 27, 2018 Restitution Hearing, **Doc. 82, p. 17, 19, 23.**  Moreover, Defendant did not challenge this loss amount in the PSR.  Therefore, the amount of actual loss suffered by the victims is $1 million.

### C.  Government failed to carry burden on prejudgment interest.

The Government argues that the loss amount should include prejudgment interest, apparently running from the date the money was transferred from the victims to the Defendant:

- $900k on October 25, 2010; and
- $100k on November 12, 2010.

Generally, prejudgment interest may be awarded as restitution because it "reflects the victim[s'] loss due to [their] inability to use the money for a productive purpose, and is therefore necessary to make the victim[s] whole." *United States v. Patty*, 992 F.2d 1045, 1050 (10th Cir. 1993) (holding that prejudgment interest is properly included in a VWPA restitution award), *cited in United States v. Bizzell*, 7 F.3d 1045 (Table), 1993 WL 411470 (10th Cir. 1993) (unpublished). "Foregone interest is one aspect of the victim's actual loss." *Smith,* 944 F.2d at 626, *quoted in Patty*, 992 F.2d at 1050.  The rate of interest to be awarded is not fixed, but is at the discretion of the Court as necessary to compensate the victims for their lost gains.

The burden demonstrating the amount of interest is on the Government.  *See* 18 U.S.C. 3664(e) ("The burden of demonstrating the amount of the loss sustained by a victim as a result of

the offense shall be on the attorney for the Government."). Here, the Government appears to assert that the prejudgment interest should run at the federal statutory rate on the full $1 million until the property was transferred, then interest should run on the remainder.

However, there was nothing in the record indicating whether and how the victims invested the $1 million previously, and what their rate of return was. Similarly, there was no factual finding in the PSR about their rate of return, or any stipulation by the parties. This is insufficient to award prejudgment interest. Prejudgment interest should not awarded as a matter of course, but is tailored to compensate victims for their lost investment gains. *See, e.g., United States v. Scott*, 321 F. App'x 71, 72 (2d Cir. 2009) ("Accordingly, the actual value of the stolen property, the funds in the retirement accounts, at the time of sentencing was the nominal value of the stolen funds plus the subsequent investment gains lost as a result of the theft."), *citing United States v. Shepard,* 269 F.3d 884, 886 (7th Cir. 2001) (noting, when valuing money taken from a savings account, that "return of the same number of dollars would be 'inadequate' ... because the money came from an interest-bearing account"). However, there is nothing in the record to indicate their lost investment gain and how much prejudgment interest is necessary to compensate them.

The Government suggests that the Court apply the federal statutory rate, typically used for post-judgment interest. The federal statutory rate is based on a 1-year constant maturity Treasury bill. 18 U.S.C. § 3612(f)(2). Again, there is nothing in the record to indicate that this would compensate the victims for their actual loss, or is a reasonable determination of actual loss. *United States v. Williams*, 292 F.3d 681, 688 (10th Cir. 2002) ("[A] restitution order must be specific in a dollar amount that is supported by evidence in the record…A restitution order entered without proof of loss is clearly erroneous.") (internal citations and quotation marks omitted); *United States*

*v. Smith*, 156 F.3d 1046, 1057 (10th Cir. 1998) ("A restitution order entered without proof of loss is clearly erroneous.").

The victims' impact statement in the PSR estimated a 4% return rate on their investments. However, the PSR noted that the victims provided no evidence to support that rate of return. The victims' unsupported statements of loss are insufficient to support an award of prejudgment interest. *See United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015); *see also United States v. Steele*, 897 F.3d 606, 613 (4th Cir. 2018) ("We have held that a victim's unsupported loss estimate was insufficient, on its own, to substantiate a restitution amount."); *United States v. Edwards*, 19 F. Supp. 3d 366, 376 (D. Mass. 2014) (awarding no prejudgment interest where victim did not explain 2.5% rate). This is not a situation where the PSR contains undisputed facts regarding the victims' rate of return. *See, e.g., United States v. Dickerson*, 678 F. App'x 706, 723 (10th Cir. 2017) (sentencing court may accept any undisputed portion of the PSR as a finding of fact).

**D.       Summary of Loss.**

For the reasons described above, the loss suffered by the victims was $1 million, and does not include any prejudgment interest.

**II.     Valuation of Property.**

Defendant argues that the property transferred to the victims as part of the civil settlement should be credited against the loss amount above. Defendant alleges that the value of the property is $750,000 or more. Defendant bears the burden of the value of the property he wishes to use to offset restitution. *United States v. Howard*, 887 F.3d 1072, 1079 (10th Cir. 2018) (defendant bears burden of proving amount of any offset to actual loss sustained by victims); *see also* 18 U.S.C. § 3664(e) ("The burden of demonstrating such other matters as the court deems appropriate shall be

upon the party designated by the court as justice requires."), *and United States v. Smathers*, 879 F.3d 453, 461 (2d Cir. 2018) (no abuse of discretion where district court placed burden on defendant to show offset to restitution from civil settlement).

### A.  Fair Market Value.

In determining the value of the real property, the Court will use fair market value. *See United States v. Howard*, 887 F.3d 1072, 1078 (10th Cir. 2018) ("[I]n determining the proper amount of restitution, a district court may, for different types of property, determine that fair market value, replacement cost, foreclosure price, cost to the victim, repair or restoration costs, or another measure of value is most appropriate."). The property at issue is real property, and the victims apparently held on to it for approximately 2 years before listing it. Therefore, the Court finds it is inappropriate to wait for a sale price of the property.

Fair market value is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." Black's Law Dictionary (10th ed. 2014); *United States v. Robertson*, 493 F.3d 1322, 1332 (11th Cir. 2007) ("The fair or reasonable cash price for which the property could be sold in the market in the ordinary course of business.").

### B.  Fair Market Value of Property is $223,360.

The real property at issue is a 3.49 acre unimproved parcel of land in Farmington, New Mexico, at 3025 W. Main St., Farmington, New Mexico. The property is zoned for general commercial use. **Deft. Ex. 3.** A small section of the property is on a major thoroughfare, W. Main St. or Highway 64. The only other access to the property is through Apache Rd., which dead ends near the San Juan river. *See* **Gov. Ex 2, Deft. Ex. 2.**

The victims received the property on or about August 16, 2016, and kept the property. It was apparently not listed until around September 2018. **Gov. Ex. 3.** An analogous provision of the MVRA, although not exactly on point, indicates that the Court should subtract the value of property returned to the victims as of the date it is returned. *See* § 3663A(b)(1)(B). Here, the victims apparently held on to the property for two years before listing it. There is no explanation on the record why they held on to it. Therefore, the Court finds that the appropriate value is on or around the time they received the property.

        1.    <u>Government's Appraisal</u>. The Government produced an appraisal, measuring the value of the property on or about July 26, 2017. The Court finds that this appraisal was performed reasonably close in time to aid in a reasonable determination of the value of the property at the time it was transferred to the victims.

The appraisal includes as comparables four sales and two listings. The purpose of the appraisal was to develop an opinion on market value. **Gov. Ex. 2.** The appraisal provided that the comparable properties were similar in utility and market appeal. Based on the comparable sales, the appraisal came to a valuation of the land at $ 223,360, or a price per acre of $ 64,000.

The Court finds the appraisal credible and **FINDS** that **$223,360** is a reasonable determination of the value of the property as of the time it was transferred to the victims.

        2.    <u>Government's Evidence is More Credible</u>. Defendant argues that the list price of the neighboring property is the best comparable. The Court disagrees. The neighboring property is approximately the same size, at 3.28 acres, and is *listed* for sale at $750k. The property has not sold at that price. The Court finds this comparable an inadequate measure of fair market value.

In contrast, the Government's appraisal includes four *sales* overall. Moreover, the neighboring property appears to be superior to the victims' property, with more exposure to the main thoroughfare, Highway 64.

Defendant's "market analysis" is similarly inadequate. **Deft Ex. 1.** The "market analysis" specifically disclaimed that it should not be used for appraisal purposes. It included two comparable properties – both *listings* and not *sales*. One, at the date of the market analysis, was on the market for 323 days. The other was on the market for 1,555 days. The Court finds that neither of these properties in the market analysis are representative of fair market value.

Defendant also argues the fact that the victims settled is evidence that that property is worth $950,000. The Court disagrees. There are many reasons why parties to a civil action settle. The United States represented that the victims are elderly, live out of state and are not in good health and the Court has no reason to question these representations. The victims initiated a civil lawsuit in an effort to collect what they could from the Defendant who defrauded the victims out of $1 million. It's entirely reasonable for the victims to settle the civil lawsuit, as there is no doubt given the victims' status that they had any desire to continue to throw good money after bad. Consequently, the mere fact that they settled does not indicate that the victims thought the property was worth $950,000.

Therefore, the Court concludes that the appraisal is the best evidence in the record before the Court to guide it in a reasonable determination of the real property's value at the time of the sale.

III.   **Credit for Payments Received by Victims under Civil Settlement.**

When determining the amount of a restitution award under the MVRA, the court must "reduce restitution by any amount the victim received as part of a civil settlement." *United States*

*v. Gallant*, 537 F.3d 1202, 1250 (10th Cir. 2008), *citing United States v. Harmon,* 156 Fed.Appx. 674, 676 (5th Cir. 2005); *See also United States v. Masek*, 588 F.3d 1283, 1290 n.3 (10th Cir. 2009) *("Gallant* requires that a civil settlement be credited against a restitution award, as the district court did here.").

"This principle achieves the apparent congressional purpose of maximizing the award against a criminal defendant guilty of fraud, while avoiding the undesirable result of restitution effectuating a double recovery." *United States v. Gallant*, 537 F.3d 1202, 1250 (10th Cir. 2008); *See also United States v. Blacketer*, No. 16-20076-JAR, 2017 WL 119589, at *1 (D. Kan. Jan. 12, 2017) (reducing restitution amount by amount actually received in civil settlement); *see also* 18 U.S.C.A. § 3664(j)(2) ("Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—" any civil proceeding); *see also United States v. Rhoads*, 159 F.3d 1355 (5th Cir. 1998) ("we have recognized that "a court may offset restitution in a criminal's case by the amount of a civil settlement to avoid double recovery by victims."), *and United States v. May*, 500 F. App'x 458, 462–63 (6th Cir. 2012) ("Thus, when determining the amount of restitution under the MVRA, the court must reduce restitution by any amount the victim received as part of a civil settlement, in order to avoid the undesirable result of restitution effectuating a double recovery.").

Moreover, the Court may credit the receipt of "in-kind" payment against the amount owed. *See Robers v. United States*, 572 U.S. 639, 134 S. Ct. 1854, 1858, 188 L. Ed. 2d 885 (2014) ("And § 3664(f)(4) defines "in-kind payment" as including "replacement of property." These provisions would seem to give a court adequate authority to count, as part of the restitution paid, the value of collateral previously received but not sold."). Because the victims agreed to accept the real

property, the Court, in its discretion, credits the "in-kind" payment of real property to the overall restitution amount.

Here, the Court concludes that the $223,360 value of the real property, plus any payments received by the victims under the promissory note, shall be credited against the $1 million restitution amount. Therefore, the remaining restitution is $776,640, less the payments received by the victims on the promissory note.

**IV.** **Defendant's Ability to Pay**.

Neither party addressed the schedule of payments, or Defendant's ability to pay. The Defendant bears the burden of demonstrating his financial resources. 18 U.S.C. § 3664(e), *cited in United States v. Wilson*, 416 F.3d 1164, 1170 (10th Cir. 2005). Defendant did not request an installment schedule.

After determining the amount of restitution owed to the victims, the Court "shall ... specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). When setting a schedule of payments, the district court must consider "the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; projected earnings and other income of the defendant; and any financial obligations of the defendant; including obligations to dependents." 18 USC § 3664, *cited in United States v. Zunie*, 444 F.3d 1230, 1238 (10th Cir. 2006).

Although Defendant did not object or specify a payment schedule, failure to consider the § 3664(f)(2) factors is plain error anyway. *United States v. Ahidley*, 486 F.3d 1184, 1188 (10th Cir. 2007) (plain error for district court to order immediate payment without considering § 3664(f)(2) factors).

The undisputed evidence in the PSR indicates that Defendant has substantial debts, and a net monthly loss of $2,435. His only income is $1,132 in social security. Defendant does not have dependents, and is instead supported by his ex-wife and an apparent "loan" from her. Defendant appears to have severe medical issues which, based on information provided by the Probation Officer, suggest that Defendant's life expectancy may not be that long. These severe medical issues also suggest that Defendant may never able to work again. However, the Court is reluctant to rely on Defendant's statements about his assets and income. Somehow, Defendant is able to make payments pursuant to the promissory note to the victims. It is unclear what assets these payments are coming from, but they are not listed in the PSR.

Therefore, the Court will direct the parties to file supplemental briefing on (1) Defendant's ability to pay, and (2) what the payment schedule should be. Additionally, the United States Probation Officer shall also make a recommendation on what the restitution payment schedule should be. The parties should attach any evidence they wish the Court to consider, or an offer of proof.

## CONCLUSION

Therefore, the Court concludes that restitution is in the amount of $1 million. Defendant is entitled to a credit of $223,360 for the value of the property transferred to the victims. Defendant is also entitled to credits for payments made under a promissory note. Because the payments on the promissory note are not in the record, the Court finds that restitution is in the amount of $776,640, less any payments made pursuant to the promissory note (so far, either $15,000 or 25,000). Post-judgment interest shall run pursuant to 18 U.S.C. § 3612(f)(2).

At this time, however, the Court will not issue the final restitution order until the parties brief the issue of Defendant's ability to pay and the schedule of payments as follows. The

Defendant shall file a brief within **fourteen (14) days** of the issuance of this order. The Government shall file a response within **fourteen (14) days** of the filing of Defendant's brief. Probation shall also file a recommended restitution payment schedule.

    **IT IS SO ORDERED**.

CHIEF UNITED STATES DISTRICT JUDGE