# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

---

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                          No. 15-cr-3764 WJ

BOBBY WILLIS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court following a hearing on Defendant Bobby Willis' Motion to Reduce Sentence (Doc. 96). Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582 and the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194. The United States opposes the motion based on, inter alia, the severity of Defendant's crime. Having carefully reviewed the record and applicable law, the Court denies the Motion.

## BACKGROUND

In 2010, Defendant persuaded Joseph and Teresa Lee to transfer $1 million - the majority of their retirement savings - to a real estate investment group. Defendant pocketed the money instead of investing it as promised. When the Lees later inquired about the status of their investment, Defendant represented it had grown in value. In 2015, the United States charged Defendant with two counts of wire fraud (18 U.S.C. § 1343). He pled guilty in exchange for a sentence of 0 to 24 months imprisonment. During sentencing proceedings, Defendant requested probation based on his various medical conditions. By a Judgment entered February 12, 2018, the Court (Hon. Robert G. James) sentenced Defendant to 24 months on each count, to run concurrently, followed by three years of supervised release.

Defendant was originally scheduled to report to the Bureau of Prisons (BOP) on April 5, 2018. He received an extension based on medical issues and continued to litigate restitution throughout 2018. On December 19, 2018, Defendant began serving his sentence at a BOP medical facility in Springfield, Missouri. The next day, he asked the BOP to move for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The BOP denied the request on April 9, 2019, citing the severity of his offense. Based on certain credits, Defendant is scheduled to be released on September 28, 2019, after serving about nine months in federal custody.[1]

Defendant filed the instant Motion to Reduce Sentence on April 17, 2019. He argues BOP Physician Scott Moose predicted he has less than 18 months to live based on his medical issues. Those issues include: Factor V Leiden Deficiency; segmental arterial mediolysis (*i.e.,* arterial dissections); severe coronary artery disease; strokes; Parkinson's disease; diabetes; labile hypertension; and kidney hemorrhage. He asks the Court to order his immediate release, which would reduce his federal sentence to about five months. The United States concedes Defendant meets the medical criteria for a sentence reduction. However, the United States argues Defendant should serve the full nine months in BOP custody based on the severity of his crime. At the hearing, the United States also noted it considered Defendant's medical conditions and offered a below-guideline sentence in the Plea Agreement. The Plea Agreement contemplates a sentence of 0 to 24 months, while the guideline range is 27 to 33 months.

---

[1] The United States contends the BOP awarded 353 days of prior credit for time served in state custody, on charges unrelated to Defendant's fraud on the Lees. The Court takes no position on the BOP's calculation of Defendant's sentence, other than to note the parties agree on the projected release date.

## DISCUSSION

Compassionate release is governed by 18 U.S.C. § 3582(c). Prior to the enactment of the First Step Act, only the BOP could raise the issue. The First Step Act modified 18 U.S.C. § 3582(c)(1)(A), however, with the intent of "increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, at 5239. Section 3582(c)(1)(A) now allows a federal prisoner to seek compassionate release after exhausting all administrative remedies with the BOP. The parties agree Defendant has satisfied the exhaustion requirement.

Aside from allowing prisoners to bring a motion directly, the First Step Act did not change the standards for compassionate release. Relief is available where the proposed sentence reduction is supported by: (1) "extraordinary and compelling reasons;" (2) "applicable policy statements issued by the Sentencing Commission[;]" and (3) "the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i). As to the first requirement, Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for a sentence reduction, including … a list of specific examples." 28 U.S.C. § 994(t). The Application Notes to U.S.S.G. § 1B1.13 describe two categories of extraordinary medical impairments. The first category applies to prisoners 65 or older who have served at least 10 years (or 75%) of their sentence and are experiencing "serious deterioration … because of the aging process." U.S.S.G. § 1B1.13, app. note. The second category, which is relevant here, applies to younger prisoners "suffering from a terminal illness" or "a serious … medical condition that substantially diminishes the ability … to provide self-care within the environment of the correctional facility." *Id.* Defendant is wheelchair bound, blind, and requires 24/7 care. He was also given a specific prognosis of life expectancy (18 months or less from January 2019). The Court therefore finds

"extraordinary and compelling reasons" warrant a sentence reduction.

The next requirement - that the reduction is consistent with Sentencing Commission policy - focuses on community safety. The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Relevant factors include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger. *Id.* (incorporating the 18 U.S.C. § 3142(g) factors). Defendant contends he is too frail to pose a risk of danger. The United States disagrees, noting he managed to steal from the victims despite various health problems. The Court is hesitant to find Defendant poses no risk to the community, as fraud appears ingrained in his character. However, given Defendant's health problems, the Court is convinced any risk can be managed by the terms of his supervised release. *See* 18 U.S.C. § 3142(g) (noting conditions of release can mitigate danger to the community). A sentence reduction is therefore consistent with Sentencing Commission policy.

The last requirement for compassionate release, which focuses on the § 3553(a) factors, is the main point of contention in this case. Defendant argues the factors favor leniency because each day in the BOP medical facility constitutes "hard time." The United States contends Defendant already received a lenient sentence based on his medical conditions, and that further reductions are inappropriate based on the severity of his crime.

Section 3553(a) requires the Court to impose a sentence that considers:

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--
    **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

4

> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> **(5)** any pertinent policy statement … by the Sentencing Commission;
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release "due to medical conditions [a]s … a rare event." *White v. United States*, 2019 WL 2067223, at *2 (W.D. Mo. May 9, 2019). *See also United States v. Clark,* 2019 WL 1052020 (W.D.N.C. Mar. 5, 2019) (denying relief, which is "extraordinary"); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. Apr. 3, 2019) (same); *United States* v. Casey, No. 1:06CR00071, 2019 WL 1987311, at *1 (W.D. Va. May 6, 2019) (same). Prisoners typically only obtain relief after serving a significant term of incarceration. *See, e.g., United States v. McGraw,* 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019) (granting the motion and noting defendant already served "nearly 17 years, a significant sanction"). Here, Defendant reported to the BOP medical facility about five months ago, after much delay and litigation. While the Court is sympathetic to his health issues, this term of incarceration weighs against an early release.

In addition, Defendant's offense was serious, and "it inflicted considerable harm upon his victims." *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) (considering harm as part

5

of the § 3553(a) analysis); *see also United States v. Walker,* 844 F.3d 1253, 1256 (10th Cir. 2017) ("[T]he length of the sentence should reflect the harm done"). The Lees were nearly 65 when they encountered Defendant. He misappropriated the majority their retirement savings, and Dr. Lee must continue to work well into his 70's to survive. *See* Victim Impact Statement, Doc. 55 at 9. Based on the restitution proceedings, it appears unlikely the Lees will ever recoup their money. Releasing Defendant after only five months would minimize both the impact on the victims and the extent of the fraud. *See, e.g., Rodriguez-Aguirre v. Hudgins*, 739 Fed. App'x 489 (10th Cir. 2018) (affirming the denial of compassionate release motion based on the "seriousness of defendant's offense").

Finally, the requested relief undermines the need to "promote respect for the law," "afford adequate deterrence to criminal conduct," and "avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(2)(A), (B). The Tenth Circuit is particularly focused on these elements "in the context of white collar crime." *Sample,* 901 F.3d at 1200. In *Sample,* the Tenth Circuit reversed the district court for imposing probation after a defendant misappropriated over a million dollars. The punishment "raise[d] concerns of sentencing disparities according to socio-economic status," particularly because the "mean length of imprisonment [for fraud offenders] is 39 months." *Id.* at 1201 (quoting U.S. Sent'g Comm'n, Sourcebook of Fed. Sent'g Statistics, Table 12, Table 14 (2016). Defendant's sentence for wire fraud falls well below that number, based on concessions by the United States and earned credits. Granting Defendant a further sentencing reduction would place him in a dramatically more favorable position than other offenders.

Having considered the § 3553(a) factors and the policy underlying § 3582 and the First Step Act, the Court finds Defendant must serve the remainder of his sentence.

**IT IS THEREFORE ORDERED** that the Motion to Reduce Sentence (Doc. 96) is **DENIED.**

**SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE